IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**SILVESTRE B. CUEVAS,**

       **Petitioner,**

v.                              **CIVIL ACTION NO. 2:07cv31**
                                       **(Judge Maxwell)**

**JOE DRIVER,**

       **Respondent.**

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On April 19, 2007, the *pro se* petitioner, Silvestre B. Cuevas ["Cuevas"], an inmate at the United States Penitentiary Hazelton in Bruceton Mills, West Virginia, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. §2241, seeking restoration of forty days of non-vested good time that he lost through a disciplinary hearing. By Order entered on May 9, 2007, the Court directed the respondent to show cause why the petitioner should not be granted. On June 5, 2007, the respondent filed a Motion to Dismiss or in the alternative Motion for Summary Judgment. On August 10, 2007, the Court issued a Roseboro Notice, and on August 31, 2007, Cruzen filed a response. This matter is pending before me for an initial review and Report and Recommendation pursuant to LR PL P 83.09.

### II. FACTS

Cuevas is serving a 96 month sentence imposed by the United States District Court for the Central District of California. The sentence was imposed on September 10, 2001 following his

conviction for violating 21 U.S.C. § 843(b), Use of a Communication Facility in Committing a Felony Drug Offense.

On April 11, 2006,[1] an incident report was prepared by Lt. R. James ("James") charging Cuevas with a violation of Prohibited Act Code 104,[2] Possession, manufacture of a weapon. (Doc. 6-5, pg. 1). The report indicated that Lieutenant Arnett ("Arnett") observed Cuevas walking on the compound with his shirt tail hanging out. Arnett instructed Cuevas to stop and report to him. Cuevas became defiant but eventually began to walk slowly toward Arnett. Cuevas was then escorted to James' office where he was pat searched. During the pat search, James found a piece of metal approximately 7 inches in length located in the bottom of Cuevas' jacket. James noted that it appeared that the piece of metal was in the process of being manufactured into a homemade weapon known as a shank. Cuevas indicated that the piece of metal was not his, and he did not know how it got in his jacket. Cuevas was then escorted to the Special Housing Unit and placed in administrative detention pending an investigation. (Id.). A copy of the incident report was delivered to Cuevas on April 11, 2006 at 10:35 p.m. (Id).

On April 11, 2006, the investigating officer, R. Mauldin, attempted to interview Cuevas regarding the incident. However, Cuevas refused to come out of his cell to make a statement on his behalf. Accordingly, the investigating officer concurred that Cuevas was properly charged with

---

[1] At the time of the incident, the petitioner was incarcerated at FCI Jesup which is located in Georgia. However, at the time he filed his petition, he was incarcerated at USP Hazelton, which is located in Bruceton Mills, West Virginia which is within the venue of this Court.

[2] 28 C.F.R. § 541.13 contains a list of prohibited acts and disciplinary scale. Table 3 of that section sets forth Prohibited Act 104: "Possession, manufacture or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive, or any ammunition."

possession of a weapon, and the incident was referred to the Unit Disciplinary Committee ("UDC") for further disposition.(Doc. 6-5, p. 2). Given the severity of the charges, the UDC referred to matter to the Disciplinary Officer ("DHO") with a recommendation that Cuevas receive thirty days Disciplinary Segregation and be disallowed twenty-seven days Good Conduct Time. (Doc. 6-5, p. 3).

The Discipline Hearing Officer ["DHO"] hearing was held on April 20, 2006. The DHO found that Cuevas had committed the Prohibited Act Code 104, possession of a sharpened instrument. In reaching his decision, the DHO considered: (1) the written statement of the reporting officer, James, (2) a digital photograph of the instrument, dated April 11, 2006; and (3) the written memorandum of Arnett, dated April 11, 2006 setting forth the events on the compound leading up to the pat search and discovery of the metal instrument. In addition, the DHO also considered that fact that Cuevas elected to make no formal statement on his own behalf at the hearing, but also noted that on more than one occasion Cuevas claimed the piece of metal was not his, and he did not know how it got in his jacket. The DHO sanctioned Cuevas to 45 days of disciplinary segregation, forfeiture of 40 days of non-vested good conduct time, and disallowed 40 days of Good Conduct Time. The DHO also recommended a disciplinary transfer. The DHO report was delivered to Cuevas on May 2, 2006. (Doc. 6-6, pp. 1-4).

Cuevas then appealed to the appropriate Regional Office and Office of General Counsel, where a final decision denying his appeal was entered on January 11, 2007. (Doc. 1-1, p. 12). Thereafter, Cuevas filed the instant §2241 petition.

### III. CONTENTIONS OF THE PARTIES

Cuevas raises the following grounds in his Application for Habeas Corpus:

(1) The sanctions issued by the DHO were based on the DHO's personal opinion of Cuevas' character and not solely for violation of Code 104, possession of a weapon.

(2) The DHO imposed greater sanctions than were warranted.

The respondent argues that the petition should be dismissed because:

(1) Cuevas was provided all of the Due Process Rights required by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974) regarding the disciplinary hearing; and

(2) The evidence relied upon by the DHO was sufficient for a finding of guilt.

### III. Standard of Review

**A. Motion to Dismiss**

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957).

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

4

judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## IV. ANALYSIS

### A. Due Process

The Due Process Clauses of the Fifth and Fourteenth Amendments provide that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. V and XIV, §1. A liberty interest is involved in the instant case as Cuevas was denied good time credit. See Young v. Kann, 926 F.2d 1396, 1399 (3rd Cir. 1991 (a federal prisoner "has a constitutionally protected liberty interest in good time credit").

In Wolff v. McDonnell, 418 U.S. 539 (1974), the United States Supreme Court addressed

the due process that must be provided during a prison disciplinary proceeding. According to the Supreme Court, due process requires as follows:

(1) giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

(2) providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

(3) allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

(4) permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

(5) providing impartial fact finders.

Id. at 564-571. The information before the Court reveals that Cuevas was provided due process as contemplated by Wolff.

First, Cuevas received written notice of the charges at least 24 hours in advance of the DHO hearing. More particularly, Cuevas received a copy of the incident report on April 11, 2006, and the DHO hearing was on April 20, 2006.

Second, Cuevas was provided a written statement by the DHO as to the evidence relied on and the reasons for the disciplinary action. The DHO report, dated April 28, 2006, notes that the specific evidence relied upon to support the finding of possession of a weapon was: (1) the written

statement of the reporting officer, James, (2) a digital photograph of the instrument, dated April 11, 2006; and (3) the written memorandum of Arnett, dated April 11, 2006 setting forth the events on the compound leading up to the pat search and discovery of the metal instrument. In addition, the report explains the reason for the disciplinary action. More specifically, the report states that

> "[t]he action/behavior on the part of any inmate to possess, manufacture, or introduce any type of weapon, firearm, or explosive capable of inflicting serious injury to another person, whether another inmate [or] staff member, threatens the health, safety, and welfare of not only the inmate involved, but that of all other inmates and staff. In the past, this type of action/behavior has been shown to result in serious injuries, even death, and the serious loss of property. The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times.
>
> The past behavior of this inmate, coupled with this incident and his demeanor at this DHO hearing is indicative of an inmate who needs the physical controls, and greater supervision offered at a high security facility. This inmate has a significant record: discipline history of carrying weapons and being assaultive to include serious assaults. His recent behavior reveals that he may not be appropriate to handle the responsibilities of a less secure environment. The DHO feels strongly that inmate Cuevas' continued presence at t his institution would likely lead to more serious incidents.

(Doc. 6-6, pp. 3-4.)

Third, Cuevas was advised of his right to call witnesses and present documentary evidence. Cuevas did not identify any witnesses or evidence.

Finally, Cuevas waived his right to an inmate representative, and there is no evidence the DHO was not an impartial fact finder. Although Cuevas alleges that the DHO discriminated against him based on his past history and the DHO's personal opinion of him, the evidence does not support his claims. Based upon the record before the Court, the undersigned finds that the DHO report does not reveal any bias and that there is no justification for finding the DHO was biased.

Not only was Cuevas provided all the due process rights required by <u>Wolff</u>, the findings

made by the DHO are sufficient to support the finding that Cuevas violated Prohibited Act Code 104, possession of a sharpened instrument. The Supreme Court held in Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985) that "[t]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." The Supreme Court further stated:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

In reaching his decision, the DHO considered the statement of James, the reporting officer, the memorandum of Arnett, and the digital photograph of the instrument taken from Cuevas' jacket. Although Cuevas denied the instrument was his and maintained that he did not know how it got in his jacket, the DHO noted that BOP policy makes an inmate responsible for anything found on his person, in his personal property, or in his living quarters. After considering all of the evidence the DHO determined the evidence established the reasonable conclusion that Cuevas had possession of a weapon and, therefore, had committed the prohibited act as charged. Clearly, there was "some evidence" to support a guilty finding in this case, and the DHO's decision must therefore stand.

## V. RECOMMENDATION

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss (Doc. 6) be **GRANTED**, and the petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the

Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: November 21, 2007

  /s/ James E. Seibert  
JAMES E. SEIBERT  
UNITED STATES MAGISTRATE JUDGE